**MESCHKOW & GRESHAM, P.L.C.**
Jordan M. Meschkow, AZ Bar No. 007454
5727 North Seventh Street
Suite 409
Phoenix, AZ 85014-5818

Telephone: (602) 274-6996
Facsimile: (602) 274-6970
E-mail: jm@patentmg.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Guardian Bells, LLC,** an Arizona Limited Liability Company**,**<br><br>Plaintiff,<br><br>**v.**<br><br>**All American**, a Rhode Island company, **All American Leathers**, a Rhode Island company, **Marg Davison**, an individual, **Marg and John Doe Davison**, husband and wife; **Richard Berg**, an individual, and **Richard Berg and Jane Doe Berg**, husband and wife.<br><br>Defendants. | Case No.<br><br>COMPLAINT<br>(Verified)<br><br>(1) COPYRIGHT INFRINGEMENT<br>(2) FALSE DESIGNATION OF ORIGIN AND TRADE DRESS INFRINGEMENT TRADEMARK INFRINGEMENT;<br>(3) UNFAIR COMPETITION<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Guardian Bells, LLC ("GB"), for its Complaint against All American, All American Leathers, Marg Davison, Marg and John Doe Davison, husband and wife, Richard Berg, and Jane Doe Berg, husband and wife; (collectively "the Defendants") alleges as follows:

## PARTIES AND JURISDICTION

1. This Court has jurisdiction over this Action under 17 U.S.C. § 101, et seq., and 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1331 (federal question), 1332

(diversity), 1338(a) (copyrights, trademarks, and pendent unfair competition claims), and 1367(a) (supplemental jurisdiction).

2. This Court has jurisdiction over the unfair competition claims asserted herein under the provisions of 28 U.S.C. § 1338(b) in that the claims are joined with a substantial and related claim under the Trademark Laws of the United States.

3. This Court also has jurisdiction under 28 U.S.C. § 1332, as there is a diversity of citizenship between the parties, and the matter in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000), exclusive of interest and costs.

4. This Court also has pendent jurisdiction over the state law claims asserted herein in that they arise out of a common nucleus of operative fact with plaintiff's federal claims.

5. Venue is proper in this District under 28 U.S.C. § 1391.

6. Guardian Bells, LLC (hereafter GB or Plaintiff) is an Arizona Limited Liability Company, authorized to do business in Arizona.

7. Upon information and belief, the defendant named All American (hereafter AA or Defendant AA) is a company of unknown origin with its principal place of business in Johnston, Rhode Island, and, and does business on the internet at http://www.gremlin-bells.com/, under the All American name. Its website, where Defendants sell and/or offer for sale their products, is available in this jurisdiction, and the http://www.gremlin-bells.com/ home page has "hot links" to individual products, several of which are the subject of this Complaint. Copies of the http://www.gremlin-bells.com/ home page and pertinent sub-pages from the website are attached as Exhibit 1.

8. GB is informed and believes, and thereon alleges, that Defendant Marg Davison (hereafter MD or Defendant MD) is the principal of AA. GB is informed and believes, and thereon alleges, that MD is married, but the spouse name is unknown, so is identified to this Court as John Doe, but whose name will be

supplied to the Court, when known. GB is informed and believes, and thereon alleges, MD for herself and the good of her married community, participated in the tortious acts described in this Complaint, that he authorized such tortious acts, and that she directed such tortious acts to be done.

9. Upon information and belief, the defendant named All American Leathers (hereafter AL or Defendant AL) is a company of unknown origin with its principal place of business in Johnston, Rhode Island, and, and does business on the internet at http://www.allamericanleathers.com under the All American Leathers name. Its website, where Defendants sell and/or offer for sale their products, is available in this jurisdiction, and the http://www.allamericanleathers.com home page has "hot links" to individual products, several of which are the subject of this Complaint. Copies of the http://www.allamericanleathers.com home page and pertinent sub-pages from the website are attached as Exhibit 2.

10. GB is informed and believes, and thereon alleges, that at all times herein concerned, Defendants, and each of them, were the agents, servants, employees, or employers of each other, and of the remaining Defendants, and each of them, and in doing the things hereinafter alleged, were acting in the course and scope of their authority as to such agents, servants, employees, or employers.

**THE CONCEPTION AND DEVELOPMENT**

11. On August 26, 2002, GB was formed. GB markets a pewter GB bell that stands approximately 1½ inches tall. The GB bell is sold with a black velvet pouch, imprinted with Guardian's logo, which is intended to resemble a motorcycle saddlebag. Inside the pouch is a card upon which is printed the "Legend of Good Luck."

12. Late in the summer of 2002, Guardian's president, Adam Hizme, conceived his version of the Legend of Good Luck ("the Legend"). According to the standard Legend, Evil Road Spirits have been latching themselves onto motorcycles for as long as there have been bikes on the road. These spirits are responsible for bad

luck and mechanical problems along the journey. If the motorcyclist secures a small bell onto his or her bike, the Evil Road Spirit will be scared away. Using the standard Legend for his foundation, Mr. Hizme broadened the myth, adding significant color and detail to the story. Under Mr. Hizme's version, the bell does more than scare away the Evil Road Spirits -it traps them inside the bell. Once trapped inside, the Evil Spirits are driven insane by the constant ringing on the bell. The bell causes them to lose their grip on the bike and then to fall to the ground. The modified Legend goes on to suggest a connection between the fallen spirits and the many potholes in the road. Mr. Hizme's modification of the Legend made it and the products sold with it highly marketable. A copy of the Legend is attached hereto as Exhibit 3 and incorporated herein by reference.

13. By November 2003, GB was operating a fruitful business. GB was designing new bells, arranging for bell production and packaging designs, and cementing relationships with distributors and vendors selling GB's products.

14. Over time, GB acquired its own metal forming equipment so that it could assure consistent quality control by producing all bells in-house. GB prides itself on the superior quality of all of its products, including its bells and accompanying pouch, which retail for between ten and twelve dollars.

15. GB markets its products through distributors and sales representatives, who sell them to, among other things, motorcycle shops. Guardian also promotes and sells its products at trade shows, including but not limited to the Sturgis Rally, which is held every August.

## REGISTRATION OF GB'S COPYRIGHTS

16. On July 14, 2003, Plaintiff registered its first Guardian bell with the Register of Copyrights. This registration was for the "Sturgis '03 Bell" design. A true and correct copy of the Certificate of Registration for the "Sturgis '03 Bell,"

Number VAu589-615, is attached hereto as Exhibit 4 and incorporated herein by reference. A true and correct copy of a photograph of the GB "Sturgis" bell, protected by this Registration (the 2006 version), is attached hereto as Exhibit 5.

17. GB continued to produce even more bell designs as its business became more successful. Following its initial registration of the Sturgis bell in the summer of 2003, Plaintiff filed additional registrations for GB bell designs and styles with the Register of Copyright. These Registrations included, but were not limited to:

- The December 31, 2003 Registration for the "Collection of Motorcycle, Dragon, Indian, and Ladyrider Bells." A true and correct copy of this Certificate of Registration, Number VA 1-322-183, is attached hereto as Exhibit 6 and incorporated herein by reference.  A true and correct copy of a photograph of the Guardian "Ladyrider" bell, as protected by this Registration, is attached hereto as Exhibit 7, and incorporated herein by reference.

- The December 31, 2003 Registration for the "Collection of Flame, Gargoyle, Angel, and Billet Bells." A true and correct copy of this Certificate of Registration, Number VA 1-322-184, is attached hereto as Exhibit 8 and incorporated herein by reference. A true and correct copy of a photograph of the Guardian "Flame" bell, protected by this Registration, is attached hereto as Exhibit 9 and incorporated herein by reference.

- The December 31, 2003 Registration for the "Collection of POW/MIA, Pig, Tribal, and Wolf Bells." A true and correct copy of this Certificate of Registration, Number VA 1-322-185, is attached hereto as Exhibit 10 and incorporated herein by reference.  A true and correct copy of a photograph of the Guardian "POW/MIA" bell, as protected by this Registration, is attached hereto as Exhibit 11, and incorporated herein by reference.

- The December 12, 2004 Registration for the "Guardian® Bells Patriotic Group 1, 2, 3, 4." A true and correct copy of this Certificate of Registration, Number VAu 651,449, is attached hereto as Exhibit 12 and incorporated herein by reference. A true and correct copy of a photograph of the Guardian "Support Our Troops" bell, as protected by this Registration, is attached hereto as Exhibit 13, and incorporated herein by reference.

ALL AMERICAN'S AND ALL AMERICAN LEATHERS' INFRINGING PRODUCTS

18. As recently as February 2007, Mr. Hizme learned someone was making pewter bells that were substantially similar to the copyrighted Lady Rider pewter bells designed and manufactured by GB. Upon learning this, Mr. Hizme called several of GB's distributors in an effort to determine who was making the bells.

19. Through one of GB's distributors, Mr. Hizme learned that AL was selling the similar bells. Mr. Hizme also learned that AL was selling the bells to many of GB's own customers and to many GB Distributors' customers. Indeed, some of these customers had apparently ordered All American bells believing that they were GB bells.

20. A letter was dispatched to AL, and GB was informed the infringing bell was discontinued. A copy of the February 21, 2007 letter is attached as Exhibit 13.

21. Later, on learning that it was AL and AA that was selling the nearly identical bells, again, Mr. Hizme, through one his buyers, placed an order for both AL and AA bells. Once the bells arrived, Mr. Hizme saw that the bells were nearly identical to those created, produced, marketed, and copyrighted by GB. For example, at the very least, five styles of the AL bells (shown in Exhibit 1), are almost exact replicas of the copyrighted GB bells, while at the very least, four styles

of the AA bells (shown in Exhibit 2), are almost exact replicas of the copyrighted GB bells.

22. The Bells: Though AA's and AL's bells are, at first glance, nearly identical to the copyrighted bells designed and sold by GB, upon more detailed evaluation, the difference between the two products is readily apparent. First, GB's products are made from a thick pewter. All American's bells, while also made of pewter, are thin and lighter in weight. Second, despite the Legend's focus on the importance of the bell in driving away Evil Road Spirits, AA's bells have rings and zip ties, in contrast to the well-defined rings of the GB bells, as do AL's.

23. The Pouch: While the packaging material accompanying Defendants bells are clearly derivative of the unique packaging material accompanying GB bells, like the bells themselves, Defendants packaging is inferior to GB packaging. GB bells are housed in slim, velvety-finished pouches, with silver letters neatly embedded into the fabric. The pouch is closed using a drawstring. Defendants' bells, on the other hand, are housed in pouches composed of an inferior velvety-finish, which are marked by raised white plastic letters that easily decompose with wear. Like GB pouches, Defendants' pouches are closed using a drawstring.

24. The Legend: Not surprisingly, Defendants have also copied the Legend. Inside every Defendants pouch, there is a card that tells a familiar story of "Evil Road Spirits" who "can't live in the presence of a bell," because the "constant ringing of the bell ... drives them insane." The spirits lose their grip and fall to the road, possibly forming potholes.

25. Mr. Hizme has spoken with numerous GB customers and discovered that both Defendants are actively marketing its bells to them. Because of the substantial similarity of the bells, pouch, and Legend, GB constantly has to assure that actual and potential customers understand that Defendants are not affiliated with GB. In an effort to assure this, GB has increased the number of

sample bells it sends to potential customers. Through these and other marketing efforts, GB hopes to assure that its customer base distinguishes between its original copyrighted bells and Defendants' knock-off, inferior copies.

26. GB is informed and believes, and thereon alleges, that Defendants intends to promote and sell Defendants bells at motorcycle bike rallies, including but not limited to the August Sturgis rally, where GB also intends to promote and sell GB bells, as GB has done year after year.

FIRST CLAIM FOR RELIEF

[For Copyright Infringement]

27. GB hereby realleges and incorporates by reference the allegations of Paragraphs 1through 25 of this Complaint as if fully set forth herein.

28. At all times relevant hereto, GB has been and still is the owner and proprietor of all right, title, and interest in and to all GB bells, including those specifically identified in Paragraph 16. *See* Exhibits 5, 7, 9, 11, and 13 (hereinafter referred to, collectively, as "the Infringed Products.").

29. GB has obtained Certificates of Registration from the Register of Copyright of the United States Copyright Office for many GB bells. Certificates of Registration protecting the Infringed Products are attached as Exhibits 4, 6, 8, 10, and 12.

30. The Infringed Products contain material wholly original to GB and are copyrightable subject matter under the United States Copyright Act, 17 U.S.C. §§ 101, *et seq.*

31. GB is informed and believes that Defendants have jointly and severally infringed and continues to infringe GB's copyrights in and to the Infringed Products by directly copying sculptures then selling and distributing the infringing Defendants bells (hereinafter referred to, collectively, as the "Infringing Products") throughout the United States. *See* Ex. 1 and 2. Such copying was done without the consent, approval, or license of GB. GB is informed and believes, and thereon

alleges, that both Defendants have done so with full knowledge of GB's rights therein. *See* Ex. 14.

32. GB is informed and believes that Defendants have infringed and continues to infringe GB's copyrights in and to the Infringed Products in great numbers as a representative of one or both of Defendants All American and/or All American Leathers has posted on the Gremlin Bell Blog that as of January 17, 2008 "Our newest Flame Gremlin Bell is becoming one of our most popular one yet." *See* Exhibit 15. The copyrighted GB Flame bell is attached as Ex. 9; the virtually identical AA Flame Gremlin Bell is shown in Ex. 1, and the virtually identical AL Flame Gremlin Bell is shown in Ex. 2.

33. Defendants' acts violate GB's exclusive rights under Section 106 of the Copyright Act of 1976, 17 U.S.C. § 106, and constitute infringement of GB's copyrights. GB is informed and believes, and thereon alleges, that Defendants' past and continuing copying, distribution, and sale of the Infringing Products constitutes a willful and deliberate infringement of GB's copyright and is causing irreparable harm and damage to GB.

34. Further irreparable harm to GB is imminent as a result of Defendants' conduct, and GB is without an adequate remedy at law. GB is entitled to an injunction restraining All American, its officers, directors, agents, employees, representatives, and all persons acting in concert with them from engaging in further acts of copyright infringement.

35. GB is further entitled to recover from Defendants the damages sustained by GB as a result of Defendants' acts of copyright infringement. GB is at present unable to ascertain the full extent of the monetary damage it has suffered by reason of Defendants' acts of copyright infringement, but GB is informed and believes, and thereon alleges, that it has sustained damages in an amount in excess of the jurisdictional limit of this Court. In the alternative, GB is entitled to statutory damages. GB is also entitled to its reasonable attorney's fees.

36. GB is further entitled to recover from Defendants the gains, profits, and advantages All American has obtained as a result of its acts of copyright infringement. GB is at present unable to ascertain the full extent of the gains, profits, and advantages Defendants have obtained by reason of their acts of copyright infringement.

SECOND CLAIM FOR RELIEF

[For False Designation of Origin and Trade Dress Infringement]

37. GB hereby realleges and incorporates by reference the allegations of Paragraphs 1 through 34 of this Complaint as if fully set forth herein.

38. The distinctive trade dress of GB's bells includes each of the following elements and/or the combination of the following elements, among other things: (a) the distinctive and unusual shape of the bells, (b) the roughly inch tall size of the bells; (c) the pewter material from which the bells are made; (d) the velvety pouch with a drawstring enclosure that is used to house the bell; (e) the writing on the front of the pouch identifying the bell's creator; and (f) the Legend, which is provided on a card within the pouch.

39. The trade dress of GB's bells is non-functional, unusual and memorable, conceptually separate from the product, and likely to serve primarily as a designator of the origin of the product. Furthermore, the trade dress of GB's bells has acquired secondary meaning.

40. Defendants' Infringing Products incorporate the arbitrary design elements and trade dress of GB's bells. The overall commercial impression of the Infringing Products is confusingly similar to GB's bells. The Infringing Products have caused actual confusion of the public, are likely to continue to cause confusion of the public, and were undoubtedly designed to confuse the public.

41. Defendants' actions in selling and marketing the Infringing Products, in interstate commerce, without consent of GB, constitute false designations of origin and trade dress infringement. Such actions have caused, and

will continue to cause, a likelihood of confusion, mistake, and deception as to Defendants' sponsorship, affiliation, and/or connection in the minds of the public.

42. Defendants' false designations of origin and trade dress infringement in interstate commerce has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

43. By reason of the foregoing, GB has been injured in an amount not yet fully determined, but believed to be in excess of the jurisdictional limits of this Court. In addition, as a result of Defendants' acts of false designation of origin and trade dress infringement, GB has suffered, and continues to suffer, irreparable harm, and GB has no adequate remedy at law with respect to this injury.

44. GB is informed and believes, and thereon alleges, that at least some or all of Defendants' actions have been fraudulent, knowing, intentional, wanton, and willful, entitling GB to damages, treble damages, profits, attorney's fees, and the costs of the action.

THIRD CLAIM FOR RELIEF
[For Unfair Competition]

45. GB hereby realleges and incorporates by reference the allegations of Paragraphs 1 through 42 of this Complaint as if fully set forth herein.

46. 41. By its conduct alleged above, Defendants have engaged in unfair competition at common law and in violation of Arizona Revised Statutes § 44-1452.

47. Because of Defendants' various acts of unfair competition, GB is entitled to restitution in an amount not presently ascertainable, but which exceeds the jurisdictional limits of this Court.

48. Because of Defendants' various acts of unfair competition, GB is entitled to injunctive relief restraining Defendants from continuing to infringe GB's copyrights and trade dress, and from continuing to engage in the acts of unfair competition described herein.

49. GB is informed and believes, and thereon alleges, that Defendants' actions have been undertaken with fraud, oppression, and malice and with the intent to injure GB. GB is therefore entitled to an award of punitive damages according to proof.

WHEREFORE, GB prays:

1. That a permanent injunction issue restraining All American, its respective agents, servants, employees, successors, and assigns, and all others in concert and privity with them from infringing GB's copyrights in GB bells, and in the Infringed Products, and from infringing the trade dress of GB bells, and from manufacturing, selling, marketing, or otherwise distributing the Infringing Products;

2. That a permanent injunction issue restraining All American Leathers, its respective agents, servants, employees, successors, and assigns, and all others in concert and privity with them from infringing GB's copyrights in GB bells, and in the Infringed Products, and from infringing the trade dress of GB bells, and from manufacturing, selling, marketing, or otherwise distributing the Infringing Products;

3. That All American be ordered to use its best efforts to recall from the market and from any other third parties any and all Infringing Products and any marketing, advertising, and promotional materials used in connection therewith;

4. That All American Leathers be ordered to use its best efforts to recall from the market and from any other third parties any and all Infringing Products and any marketing, advertising, and promotional materials used in connection therewith;

5. That All American be ordered to file with this Court and serve on counsel for GB, within thirty (30) days after entry of any injunction issued by this Court, a sworn statement as provided in 15 U.S.C. § 1116 setting forth in detail the manner and form in which All American has complied with the injunction;

6. That All American Leathers be ordered to file with this Court and serve on counsel for GB, within thirty (30) days after entry of any injunction issued by this Court, a sworn statement as provided in 15 U.S.C. § 1116 setting forth in detail the manner and form in which All American has complied with the injunction;

7. That All American be required to account to GB for All American's profits and the actual damages suffered by GB as a result of All American's acts of infringement, false designation of origin, and unfair business practices, together with interest, and that GB's recovery be trebled, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

8. That All American Leathers be required to account to GB for All American Leathers' profits and the actual damages suffered by GB as a result of All American's acts of infringement, false designation of origin, and unfair business practices, together with interest, and that GB's recovery be trebled, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

9. For actual and/or statutory damages sustained as a result of All American's acts of copyright infringement;

10. For actual and/or statutory damages sustained as a result of All American Leathers' acts of copyright infringement;

11. That All American be compelled to pay GB's attorney's fees, together with costs of this suit, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, and Section 101 of the Copyright Act, 17 U.S.C. § 505.

12. That All American Leathers be compelled to pay GB's attorney's fees, together with costs of this suit, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, and Section 101 of the Copyright Act, 17 U.S.C. § 505.

13. That All American be ordered to pay punitive damages, according to proof;

14. That All American Leathers be ordered to pay punitive damages, according to proof;

15. That Marg Davison and/or Richard Berg share in any all damages payable to GB, jointly and severally;

16. For such other and further relief as may be just and equitable.

Dated this 14th day of April, 2008

By:  s/Jordan M. Meschkow
Jordan M. Meschkow, AZ Bar No. 007454
**MESCHKOW & GRESHAM, P.L.C.**
5727 North Seventh Street
Suite 409
Phoenix, AZ 85014-5818

VERIFICATION

STATE OF ARIZONA )
) ss.
County of Maricopa )

Adam Hizme, being first duly sworn upon his oath deposes and says:

That he is the Member of Guardian Bells, LLC, the Plaintiff herein; that he has read the foregoing Complaint and knows the contents thereof; that the matters alleged therein are true of his own knowledge, except for those matters stated on information and belief, which he believes to be true.

Adam Hizme, Member
Guardian Bells, LLC

SUBSCRIBED TO AND SWORN before me this 16th day of April, 2008, by Adam Hizme.

Notary Public

(Seal)

OFFICIAL SEAL
CHARLENE R. JACOBSEN
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Dec. 30, 2010